### WRIGHT and others v. THOMAS and others.

*(Circuit Court, D. Indiana.   January, 1880.)*

ASSIGNMENT FOR BENEFIT OF CREDITORS—INDIANA STATUTES CONSTRUED. Under the statutes of Indiana an assignment for the benefit of creditors is not void, (1) because the assignees did not make oath that the indentures and schedules required by the law contained a statement of all the property belonging to them, and did not make oath to other facts named in the statute; (2) because the trustees, before entering upon their trust, did not make oath that they would faithfully execute the same, together with other things named in the statute; (3) because the assignees reserved in the deed the right to instruct the trustees as to their duties; (4) because they reserved the right, with the consent of two-thirds in value of their creditors, to remove one or all of the trustees; (5) because they authorized the trustees to sell the property on credit, or in any other manner that might seem for the best interest of all the creditors.

DRUMMOND, J.   This was a bill filed by the assignees in bankruptcy of Ebenezer Nutting, Frank Wright and Francis N. Randolph, partners, under the style of E. Nutting & Co., to determine the right and title to certain property formerly owned by the bankrupts, and also to enjoin certain creditors of the bankrupts from prosecuting suits to enforce liens claimed

by virtue of judgments obtained against them. A demurrer was interposed to the bill, which was sustained, and the bill dismissed, from which decree the plaintiffs took an appeal to this court.

The principal facts alleged in the bill, and upon which the controversy must turn, are these: E. Nutting & Co., on the twentieth day of July, 1875, being in straightened circumstances, conveyed all their property to certain persons in trust for the benefit of all their creditors equally. This conveyance was made under the act of the general assembly of this state, which provided for the voluntary assignment of personal and real property in trust for the benefit of creditors, and regulated the mode of administering the same. The grantees in this deed accepted the trust, and, submitting the matter to the Marion civil circuit court, assumed the execution of the trust under the order and jurisdiction of that court.

This deed of trust was duly recorded in the several counties in which the property assigned was situated. After this took place, and before the commencement of proceedings in bankruptcy, various creditors of E. Nutting & Co. instituted suits and recovered judgments against them in several courts, which judgments, if the deed of trust before referred to is invalid, became a lien on the real property of the bankrupts. In January, 1876, E. Nutting & Co. were adjudicated bankrupts by the district court of the United States for this district, and the plaintiffs became, by virtue of the proper proceedings in bankruptcy, the assignees of the bankrupts, and by operation of law became vested with all the property of the bankrupts. After this action of the district court the Marion civil circuit court made an order directing the trustees in the deed of trust before mentioned to convey all the property of the bankrupts to the assignees in bankruptcy, who, this being done, took possession of the property, and ever since have held the same.

Among other suits that have been commenced in the circuit court of the state was one by some of the judgment creditors to set aside the deed of trust on the ground that it was fraudulent and void under the law of the state; and the bill

now under consideration alleges that it is claimed on the part of the creditors that the deed of trust of the twentieth of July, 1875, is fraudulent and void for various reasons— *First*, because the bankrupts did not make the oath that the indentures and schedules required by the law contained a statement of all the property belonging to them, and because they did not make oath to other facts named in the statute; *second*, because the trustees, before entering upon their trust, did not make oath that they would faithfully execute the same, together with other things named in the statute; *third*, because the bankrupts reserved in the deed of trust the right to instruct the trustees as to their duties; *fourth*, because they reserved the right, with the consent of two-thirds in value of their creditors, to remove one or all of the trustees; *fifth*, because they authorized the trustee to sell the property on credit, or in any other manner that might seem for the best interests of all the creditors.

The general question in the case is whether the assignment made by the bankrupts in trust for the benefit of all their creditors was valid, or whether, on account of any or all the reasons named in the bill or presented in the argument on the demurrer by the defendants, it is fraudulent and void. Independent of the bankrupt law of the United States, there can be no doubt that it was competent for the bankrupts to make such an assignment as that named in the bill. Being insolvent, it was the most equitable distribution that could be made of their property to divide it equally among all their creditors. Then, unless the assignment was rendered invalid by virtue of the bankrupt law of the United States or of the provisions of the state law already referred to, it must be considered a valid assignment. If it was inoperative, by virtue of the bankrupt law, then the property, being all in the possession of the assignees in bankruptcy, the object of the bankrupt law is accomplished, and it is ready for distribution to the creditors of the bankrupts according to the terms of that law; and so there could be no objection to the bill on the ground that the assignment was invalid under the operation of a bankrupt law.

We proceed to consider whether it was invalid under the law of the state. Unless there was something in the law of the state which declared either expressly or by necessary implication that the assignment was invalid, then it must stand. The law of the state is "that any debtor or debtors in embarrassed or failing circumstances may make a general assignment of all his or their property in trust for all his or their *bona fide* creditors." What is the meaning of the words "make a general assignment?" The second section of the act declares the assignment must be made by indenture, duly signed and acknowledged before some person duly authorized to take the acknowledgment of deeds. "The indenture of assignment shall contain a full description of all the real estate assigned." This is all the language there is in the statute as to making the assignment which the first section says the failing debtor may do. These are undoubtedly essential elements in the making of the assignment: It must be by deed; it must be duly signed and acknowledged before some person duly authorized to take the acknowledgment; and if there is real estate to convey, then it must be described. That being so, we are prepared to consider the effect of the last clause of the first section of the statute, which is: "All assignments hereafter made by such person or persons for such purposes, except as provided for in this act, shall be deemed fraudulent and void." This simply refers to the making of the assignment. It does not declare that if some things are not done which are afterwards required to be done, by the assignor or by the trustee in the deed of assignment, that it shall be fraudulent and void.

For example, the second section of the act provides that within 10 days after the execution of the deed of assignment it shall be filed with the recorder of the county in which the assignor resides, whose duty it shall be to record the same. And it is then declared that until the assignment is recorded it shall not convey any interest in the property so assigned. Now, here is an unmistakable condition precedent to the assignment taking effect. It is not so in relation to many other matters which are required to be done. In the same

section it is declared that the assignor shall make oath, before some person authorized to administer oaths, in relation to some facts, and that the assignment shall be accompanied with a schedule containing a particular description of the personal property assigned. The making of the oath and the schedule of the personal property thus required are clearly no part of the assignment itself. They do not constitute any part of the making of the assignment. It is true that the statute declares that the schedule shall accompany the assignment, but the supreme court of this state has held that it constitutes no part of the assignment. *Black* v. *Weathers,* 26 Ind. 242. And, if the schedule is no part of the assignment, it is difficult to understand how the oath which is to be taken is a part of the assignment, especially when the statute requires that the schedule shall accompany the assignment, and makes no such requisition in direct terms as to the oath. It seems to me that the true meaning of the last clause of the first section of the statute is that it is to be confined, when it declares that all assignments made, except as provided for in the act, shall be deemed fraudulent and void, to that which by the terms of the act constitutes the making of the assignment, or indenture, as the statute calls it.

There are other sections which require certain things to be done by the person to whom the property has been assigned, and who holds it in trust for the benefit of all the creditors. It seems clear that an omission on the part of the trustee to perform his duty in respect to any act required of him by the statute cannot render the assignment itself fraudulent and void, because the legislature provides that if the trustee fails to comply with the provisions of certain portions of the law other disposition shall be made of the property by the appointment of a more competent and faithful trustee. There does not seem to be any other clause in the law, except that which is contained in the latter part of the first section, which declares under what circumstances the assignment shall be fraudulent and void. Undoubtedly it was competent for the legislature to provide, if in any respect where a demand was made by the law it was not complied with, that the assign-

ment should thereby become inoperative and void. It has not seen fit so to declare, and I do not think that in the absence of such a declaration this court can declare that it is fraudulent and void, unless the assignment is not made in the way required by the statute.

Some language used in the opinion of the court in the case already referred to is significant: "The intent of the act is to secure an equitable distribution of a debtor's estate, and to prevent one creditor from obtaining undue advantage over others. When, therefore, the instrument upon its face conforms to the requirements of the act, and a substantial compliance has also been made by the trustee, this court should not, by technical construction of the language of the law, defeat the evident legislative purpose." There is nothing in the case of *Brown* v. *Foster*, 2 Met. 152; *Hardeman* v. *Brown*, 39 N. Y. 196, or of *Britton* v. *Lorenz*, 45 N. Y. 51, inconsistent with this view. Some of the objections which are made to the deed of trust, as, for example, a certain right reserved by the assignor to give instructions to the trustee, and sell the property on credit, do not, I think, in a case like this, constitute badges of fraud *per se,* so as to render the assignment void; but, as the statute entrusts a court with the administration by the trustee of the estate, and it is entirely under its direction, undoubtedly the court would have power over any such provisions as these in the deed of assignment, so as to prevent them from operating to the prejudice of any of the creditors. The main controversy, as it seems to me, must depend upon this: Whether or not the assignors had, in good faith, assigned all their property, real and personal, for the benefit of all their creditors. That was the kind of assignment that the statute declared should be made, and that was the kind of assignment which the second clause of the first section declared, if not made, was fraudulent and void.

The result is that the decree of the district court, sustaining the demurrer and dismissing the bill, must be reversed.